## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THE BEAUTIES AND THE
BRANDS, LLC,                        )
                                    )
PLAINTIFF,                          )
                                    )
V.                                  )
                                    )          Case No: 8:23-cv-821
AICHA YODER;                        )
                                    )
AND                                 )
                                    )
THE BLUSH BAR TAMPA, LLC.           )
                                    )
DEFENDANT.

## PLAINTIFF'S OPPOSED MOTION FOR SPOLIATION SANCTIONS, REQUEST FOR EVIDENTIARY HEARING AND INCORPORATED MEMORANDUM OF LAW

COMES NOW Plaintiff The Beauties and The Brands, LLC ("TBTB") and

hereby files its Motion for Spoliation Sanctions, Request for Evidentiary Hearing

and Incorporated Memorandum of Law.

## INTRODUCTION

This Motion for Sanctions arises from egregious misconduct by

Defendants The Blush Bar (TBB) and Aicha Yoder, along with their counsel.

Specifically, the Defendants and their counsel have engaged in three key

violations: 1) spoliation of vital evidence, including altering social media and

Eventbrite pages; 2) presentation of fraudulent evidence during court-ordered

mediation; and 3) obstruction of Plaintiff's discovery efforts in bad faith. Plaintiff

requests that the Court consider striking the Defendants' Answer, Counter-Complaint, and Affirmative Defenses, drawing an adverse inference against them, and referring the matter for criminal prosecution. Plaintiff also requests that Defendant's and their counsel pay their attorney's fees in pursing this motion.

## STATEMENT OF FACTS

1. For over four years, the Plaintiff's brand, BEAUTIES AND THE BRANDS, has successfully organized numerous community workshops for entrepreneurs and has engaged in longstanding marketing efforts. The brand is known for featuring notable speakers and conducting educational programs aimed at business development.

2. Defendant Aicha Yoder was approached by the Plaintiff to speak at the initial "Beauties and The Brands" event on November 22, 2019. Yoder declined due to a scheduling conflict but offered to purchase a raffle ticket. She was also approached for speaking engagements on December 23, 2019, May 5, 2020, and January 13, 2021, but never participated. (See Exhibits A-B)

3. On January 13, 2021, despite having been invited to speak at the Plaintiff's event and being aware of the Plaintiff's brand, the Defendant posted a flyer using a confusingly similar brand name, "BEAUTY AND THE BRAND," for an event scheduled for March 7, 2021.

4. On January 27, 2021, the Defendants began marketing their services for educational workshops under the name "BEAUTY AND THE BRAND," a name confusingly similar to Plaintiff's well-established mark. (See Exhibit C)

5. On January 28, 2021, Plaintiff put the Defendant on notice of the infringement via Facebook Messenger. In response, the Defendant claimed prior use of the mark in 2018 and shared an altered flyer that lacked key details. (See Exhibit D)

6. On January 29, 2021, Plaintiff's and Defense counsel spoke. Defense counsel Shannon Ligon initially stated she would consult her client about taking down the infringing post and amending the name. Later the same day, Ligon communicated that her client refused to do so but would cease using the disputed name after the March 7, 2021, event. (See Exhibit E)

7. Despite prior communications between the parties and their legal counsel, Defendants resumed promoting their services under the disputed name on March 4, 2023, after a two-year hiatus. (See Exhibit F)

8. The initial complaint was filed on April 14, 2023 along with attached exhibits that were extracted directly from the Defendant's personal and business social media pages by Plaintiff's counsel. (See Doc 1)

9. Plaintiff also sent a spoliation notice on May 5, 2023, cautioning the Defendants against altering, concealing, or destroying evidence. The notice was accompanied by a letter and several exhibits. (See Exhibit G)

10. On July 31, 2023, the Defendant submitted a counter-complaint against the Plaintiff, asserting both priority over the contested trademark and alleging that the Plaintiff knowingly committed fraud against the United States Patent and Trademark Office (USPTO) by filing for a trademark registration while aware of the Defendant's preexisting priority rights. (See Doc 38)

11. In the same counter-complaint, they asserted their priority claim by stating that in April 2017, The Blush Bar initiated the use of the "Beauty & the Brand" mark (referred to as the "Mark") to promote their one-on-one mentoring sessions and masterclasses. (see Doc 38)

12. During a mediation session on September 8, 2023, Defense Counsels, Joseph Coleman and Shannon Ligon, presented a PowerPoint featuring flyers of purported workshops on April 15, 2017, and March 18, 2018. Plaintiff's counsel tailored discovery requests based on these representations. (See Exhibit H)

13. Despite Plaintiff's counsel requesting the PowerPoint for verification, Defense Counsel Shannon Ligon refused, stating it was a confidential record. Ligon further advised Plaintiff's counsel to subpoena the documents, even after being provided with statutory and case law that supported its production. (See Exhibit I and M)

14. Defendants contradicted their own mediation presentation in their response to Interrogatory #3, further adding to the bad faith exhibited throughout this case. (See Exhibit J)

15. In further discovery responses, Defendants failed to provide any corroborative evidence for the events they claimed to have hosted in 2017 and 2018, despite their claims in responses to Interrogatories #4 and #5. (See Exhibit J)

16. On October 12, 2023, which was eight days before the deadline for discovery responses, Attorney Joseph Coleman withdrew from the case. This withdrawal was filed as an unopposed motion, titled 'MOTION for Joseph M. Coleman to

Withdraw as Attorney for Defendants,' and it was submitted by all Defendants. [Doc 51.]

17. On October 6, 2023, Plaintiff's counsel found critical evidence on the Defendants' public social media pages. However, on October 17, 2023, these pages were made inaccessible, just two days before the discovery deadline. (See Exhibit K and L)

18. After Plaintiff's counsel contacted Defense counsel about the restricted access, the Defendants blocked Plaintiff's counsel from their social media on October 18, 2023, further obstructing the discovery process and raising serious ethical concerns. (See Exhibit N)

**ARGUMENT AND CITATION OF AUTHORITY**

### I.     Spoliation Sanction of Evidence by Defendants

The Court possesses ample discretion to enact sanctions for spoliation under both its inherent powers and Federal Rule of Civil Procedure 37, as demonstrated by cases such as *Hendricks v. Smartvideo Techs., Inc.*, 511 F. Supp. 2d 1219 (M.D. Fla. 2007) and *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005). These authorities affirm the Court's inherent power to manage its own affairs and to achieve an orderly and expeditious disposition of cases. In the present matter, there exists clear and convincing evidence that the Defendants and their legal counsel have engaged in spoliation. Following the discovery of publicly accessible evidence by Plaintiff's counsel on October 6, 2023, Defendants took willful steps to conceal this evidence just days before the discovery deadline of October 20, 2023. This course of action not only hampers the Plaintiff's ability to gather evidence but also creates significant concerns about the possible

destruction of evidence beneficial to the Plaintiff's case. The Defendants' actions thus meet the stringent criteria for spoliation and merit severe sanctions.

Moreover, Florida state courts similarly weigh specific factors when determining the imposition of spoliation sanctions. These include: (1) the extent of prejudice suffered by the opposing party; (2) the willfulness or bad faith of the responsible party; and (3) the ability to cure the prejudice. These principles are supported by cases such as *Nationwide Lift Trucks v. Smith*, 832 So. 2d 824 (Fla. Dist. Ct. App. 2002) and *Sponco Mfg. v. Alcover*, 656 So. 2d 629 (Fla. Dist. Ct. App. 1995). Upon applying these factors to the instant case, it becomes unequivocally clear that sanctions are warranted.

## II.     Ms. Yoder's and BBT's Presentation of Altered of Evidence at Mediation

The integrity of the mediation process in the judicial system is paramount, offering parties a less confrontational and more efficient route to resolution. For this reason, presenting falsified or altered evidence at mediation not only contravenes ethical norms but also disrupts the Court's ability to impartially adjudicate disputes.

In this context, the actions of Ms. Yoder, BBT, and their legal counsel during the mediation session on September 8, 2023, are particularly egregious. Defense Counsels, Joseph Coleman and Shannon Ligon, presented a PowerPoint containing altered flyers. Subsequent to that, new Co-Counsel Justin Maya produced modified versions of Eventbrite screenshots, which diverged from the original versions presented at mediation. Specifically, during mediation, the title

of the event presented on the PowerPoint was "2018 BYOB Beauty and the Brand Brunch." However, when Plaintiff's counsel requested the actual Eventbrite sales confirmation page, the mediator Jim Matulis forwarded a document titled "2018 WomanUp + ManUp! / BYOB Brunch" received directly from Ms. Yoder herself. (See Exhibit Z)

The Plaintiff and their counsel expressed concerns about these different versions, noting the impossibility of an Eventbrite page having multiple iterations. On October 20, 2023, Defense Counsel Justin Maya produced yet another altered version of the Eventbrite page, this time missing an exclamation mark at the end of 'ManUp,' revealing the alteration. (See Exhibit O) Despite multiple requests for clarification, Defense Counsel Shannon Ligon continues to assert that the PowerPoint from mediation cannot be used, thereby implying her complicity in the alteration of evidence. (See Exhibit P and W)

Courts have held that where a party voluntarily discloses protected materials in a previous matter, waiver of the work product privilege may be found. *Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n, Inc.*, 595 F.3d 1203 (11th Cir. 2010) clarifies that a firm waives its right to claim work product protection for a PowerPoint presentation when it not only voluntarily presents it during litigation but also makes it available to its opponent. *Id.*

Precedents like *Andreus v. Glob. Resorts Grp., Corp.*, No. 19-23993-CIV, 2020 WL 3270707 (S.D. Fla. Apr. 14, 2020), report and recommendation adopted, No. 19-23993-CIV, 2020 WL 3268349 (S.D. Fla. June 17, 2020) and  *Collado v. Enter. Leasing Co. of Fla.*, LLC, No. 17-80121-CV, 2017 WL 11704329 (S.D. Fla. Aug. 3,

2017) affirm that misconduct during mediation could hamper the presentation of evidence and disrupt the judicial process, and that evidence presented at mediation is subject to scrutiny and potential sanctions. *Andreus v. Glob. Resorts Grp., Corp.*, No. 19-23993-CIV, 2020 WL 3270707, at 3 (S.D. Fla. Apr. 14, 2020). The Court in *Andreus* also found that, if found to be altered or fraudulent, can form the basis for sanctions against the offending party. *Andreus* at 3 (S.D. Fla. Apr. 14, 2020). Moreover, recent case law confirms that evidence presented at mediation is discoverable and can be subject to sanctions if found to be manipulated or altered. In *Collado v. Enter. Leasing Co. of Fla., LLC*, the court made it clear that evidence presented during mediation sessions can be scrutinized. *Id.*

In summary, the altered evidence presented at mediation goes to the heart of Plaintiff's claims, specifically regarding unauthorized use of intellectual property and deceptive marketing practices. By altering these materials, Defendants sought to construct a false narrative that could potentially exonerate them, misleading not just the mediator but also, potentially, future juries and the Court itself.

### III.    Bad Faith, Obstruction, and Fraudulent Conduct by Ms. Yoder and BBT Necessitate Severe Sanctions

The Defendants' obstructive and spoliating conduct has gravely compromised the principles of judicial fairness and integrity, and the severity of these actions is highlighted by their strategically timed execution. Specifically, this pattern became glaringly evident during a court-ordered mediation session on September 8, 2023. At this session, Defense counsels presented a PowerPoint

detailing the Defendant's workshops, claiming they occurred on April 15, 2017, and March 18, 2018. (See Exhibit H) These claims starkly contradicted the Defense's subsequent responses to interrogatories. When Plaintiff's counsel sought a copy of the PowerPoint for verification, Defense counsel Shannon Ligon invoked confidentiality, in spite of established case law such as *Tiara Condo. Ass'n, Inc.*, 595 F.3d which stipulates that voluntarily disclosed materials may waive work-product privilege.

In a calculated and egregious act of bad-faith conduct, the Defendants strategically restricted access to crucial public Facebook posts, severely obstructing both Plaintiff TBTB and their legal counsel's ability to establish a prima facie case. (See Exhibit L) This act is made all the more alarming given its timing; Plaintiff's counsel was selectively and inexplicably barred from accessing Defendant's social media pages a mere three days before the discovery deadline on October 20, 2023. This blatant obstruction is particularly troubling because Plaintiff's counsel had not only previously secured screenshots of these posts as of October 6, 2023, but had also attached them as exhibits to the initial and amended complaints. (See Exhibits K and docs 1 and 37) Furthermore, a letter sent to lead defense counsel Shannon Ligon included exhibits extracted using Plaintiff's counsel's personal social media accounts, affirming the unfettered access they had to these public pages until just days before the discovery deadline.

Defendants were aware of this access, rendering their 'privacy concerns' not just disingenuous but patently false. Especially glaring is the fact that while

BBT continues to follow Plaintiff's counsel on social media, access has been selectively restricted only for the Plaintiff and their legal team, despite the public nature of all of Ms. Yoder's social media pages. (See Exhibit Q) This conduct not only aligns squarely with the bad-faith spoliation identified in *UMG Recordings, Inc. v. Vital Pharms., Inc.*, No. 21-60914-CIV, 2022 WL 18023239 (S.D. Fla. Aug. 11, 2022), aff'd, No. 21-CV-60914-CIV, 2022 WL 18023249 (S.D. Fla. Sept. 30, 2022), but also manifests as a transparent, calculated effort to obstruct Plaintiff's evidence gathering. *Id.* This action thus contributes significantly to the circumstantial evidence substantiating bad faith on the part of the Defendants.

In *Attwood v. Clemons,* 526 F. Supp. 3d 1152 (N.D. Fla. 2021), the court concluded that social media accounts, when devoid of privacy restrictions and open for public interaction, are designated public forums. *Id.* This ruling gains special significance in our case, given that Ms. Yoder operates as a "social media influencer," and her business, BBT, offers services to the broad public—all while maintaining publicly accessible social media accounts. Their accounts are generally available for all social media users to interact with their posts, much like the university's facilities in *Widmar v. Vincent*, 454 U.S. 263, 102 S. Ct. 269 (1981). *Id.* Consequently, any effort to selectively block Plaintiff's counsel from accessing this public forum—especially when the Defendant continues to follow Plaintiff's counsel on social media—undercuts any privacy arguments the Defense might raise. This selective barring, therefore, constitutes another affirmative act of obstruction and bad faith, making sanctions under Rule 37 not just appropriate but imperative.

The court in *Skanska USA Civil Se. Inc. v. Bagelheads, Inc.,* 75 F.4th 1290 (11th Cir. 2023) *USA Civ* agrees: the "intent to deprive another party of the information's use in the litigation" is the equivalent of bad faith in other spoliation contexts. *Id.* The phrase "intent to deprive" naturally requires that the spoliator has a "purpose of hiding adverse evidence" from other parties. *Id.* at 1312. By its text, Rule 37(e) creates a two-tiered sanctions regime—with lesser sanctions under Rule 37(e)(1) and more severe sanctions under Rule 37(e)(2). Both parts of the rule share two preconditions: (1) "electronically stored information that should have been preserved in the anticipation or conduct of litigation" was "lost because a party failed to take reasonable steps to preserve it" and (2) that information "cannot be restored or replaced through additional discovery." The requirements diverge after that. Rule 37(e)(1) sanctions are centered on the *effect* of a violation; they apply only where lost electronic evidence causes "prejudice to another party," which then justifies sanctions "no greater than necessary to cure the prejudice." Rule 37(e)(2) sanctions, on the other hand, look more to the *cause* of the violation. They require a finding that "the party acted with the intent to deprive another party of the information's use in the litigation." If so, the court is justified in imposing more severe sanctions: adverse jury instructions, and even dismissal or default judgment. *Id.* at 1311.

The issue at hand goes beyond mere negligence or inadvertent mishandling of evidence; it represents a calculated effort by the Defendants and their legal team to obstruct the discovery process and perpetrate fraud on the court. This is established under the principles set forth in *Foulke v. Weller*, No.

3:20cv5506/MCR/EMT, 2021 U.S. Dist. LEXIS 254934 (N.D. Fla. Dec. 6, 2021),

which require an affirmative act causing the loss of evidence and awareness of

the duty to preserve it. Id. This is in flagrant violation of Federal Rule of Civil

Procedure 37, which mandates sanctions for failing to obey discovery orders and

for not preserving electronically stored information. The invocation of Rule 37 is

particularly pertinent here, guided by the four-part test for spoliation outlined in

*Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317 (S.D. Fla.

2010).

The Defendant's conduct is also consistent with *Essent Healthcare, Inc.*, 736

F. Supp. 2d 1317 case's test for circumstantial evidence of bad faith. According to

*Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317,

The following constitutes circumstantial evidence of bad faith:

> (1) evidence once existed that could fairly be supposed to have been
>
> material to the proof or defense of a claim at issue in the case; (2) the
>
> spoliating party engaged in an affirmative act causing the evidence
>
> to be lost; (3) the spoliating party did so while it knew or should
>
> have known of its duty to preserve the evidence; and (4) the
>
> affirmative act causing the loss cannot be credibly explained as not
>
> involving bad faith by the reason proffered by the spoliator. *Id.*

Equally troubling are the discrepancies found in flyers and event details.

For example, a flyer for a "BYOB - Bring Your Own Brand" event dated May 15,

2019, offers a sign-up link that redirects to a blog with no pertinent information,

photos, or sign-up options for the event. (See Exhibit R and S) Intriguingly, this

event was never mentioned until it suddenly appeared during the discovery phase. During the mediation session, as well as in their initial counterclaim, the Defendants only referred to two specific events—conspicuously leaving out any reference to this May 2019 event. (See Doc 38 and See Exhibit H) Furthermore, a thorough review of Ms. Yoder's publicly accessible social media accounts, which she uses for promotional purposes, yields no evidence of this purported event. This raises serious questions about the flyer's authenticity; it suggests that the flyer may have been either crafted solely for the discovery process or deliberately removed from online platforms to conceal evidence. (See Exhibit AA)

Further exacerbating concerns is an incident that occurred on July 30, 2023. Significantly, this date falls after Ms. Yoder received a formal spoliation notice on May 5, 2023. (See Exhibit G) On this date, Ms. Yoder requested a copy of the "Beauty and the Brand Masterclass" from Acuity, only to be informed that the class had been made "private." (See Exhibit T) This action strongly implies another calculated effort to conceal relevant evidence. Notably, it remains ambiguous whether this concealed class refers to the event slated for March 7, 2021, or the one on March 26, 2023, adding another layer of obfuscation. Moreover, Plaintiff's initial and amended complaints included a screenshot of a sign-up page for a mentorship program announced on March 4, 2023, scheduled to start on March 20, 2023. [see doc 32.] This crucial piece of evidence has since been removed from the Defendant's website. (See Exhibit U and Exhibit V) Plaintiff's counsel formally notified Defense counsel about this spoliation of

evidence on October 21, 2023, and as of this filing, has received no response or explanation. (See Exhibit U)

Furthermore, the actions of the Defendants extend beyond simply prejudicing the Plaintiff; they compromise the integrity of the judicial process itself. This conduct directly contravenes Florida Bar Rule 4–3.4(c), raising serious ethical concerns. Defense counsel Shannon Ligon's dismissive and unresponsive behavior toward legitimate queries from Plaintiff's counsel has been troubling. Despite being provided with substantive case law and statutory references that justify the request for disclosure, Shannon Ligon has opted for obfuscation, repeatedly citing privilege and confidentiality as shields for not producing critical evidence. (See Exhibit W and P) Her dismissive attitude is exemplified by her offhand remark that the legal process is akin to "chess, not checkers," thereby diminishing the serious nature of the litigation and suggesting a calculated strategy of deceit and delay. This pattern of behavior can be described as nothing less than gaslighting, creating a false narrative to evade responsibility. Given this ongoing pattern of calculated obstruction, dismissiveness, and deceit, the imposition of sanctions is not only warranted but imperative to maintain the integrity of the judicial process.

In light of the Defendants' calculated deception, intentional obstruction, and bad faith conduct, the Plaintiff has met the high burden of "clear and convincing evidence," warranting the Court's invocation of inherent power to issue severe sanctions.

### IV.   BBT and Ms. Yoder's Spoliation of Evidence Cannot Be Cured.

Sanctions against BBT and Ms. Yoder are not only warranted but essential due to the irreversible harm and insurmountable legal complications their actions have precipitated. Specifically, their strategic decision to selectively restrict, and ultimately block, access to key publicly viewable social media posts impedes Plaintiff TBTB's and their legal counsel's ability to conduct an effective discovery. This obstruction is particularly devastating because it was executed just three days before the already expired discovery deadline of October 20, 2023, severely compromising Plaintiff TBTB's ability to conduct a thorough and effective discovery process.

The traditional aim of spoliation sanctions is to restore parties to the position they would have been in had the spoliation not occurred. Unfortunately, such restoration is practically unattainable in this case. The Defendants' actions have provided them an unfettered opportunity to potentially alter, destroy, or even conceal key evidence, including but not limited to the questionable flyers whose authenticity now remains impossible to verify.

Compounding this dilemma is the legal quandary that Plaintiff's counsel faces. While existing discovery rules permit the collection of evidence only through authorized legal channels, it is crucial to note that the Defendant's social media pages are public forums, available for public consumption. Plaintiff's counsel is not only entitled but obligated to conduct an independent investigation and retrieve relevant evidence from sources that are publicly accessible. This includes all forms of publicly available media such as news

articles, blog articles, websites, and social media posts, all of which are relevant and discoverable in this litigation.

During this period of calculated concealment, Plaintiff's counsel is thwarted from legally procuring evidence that should be publicly accessible on social media platforms. The irreparable nature of this situation leaves the Plaintiff with no reasonable means to ascertain the extent of evidence that may have been lost, altered, or concealed. Resorting to costly forensic evaluations to prove or disprove the altering of evidence would be the only remaining option. However, even such extreme measures would likely prove to be herculean tasks, further protracting the litigation timeline and escalating costs for both parties.

In summary, the irremediable and consequential nature of this spoliation not only inflicts severe prejudice upon TBTB but also casts a shadow on the integrity of the entire judicial process, thereby necessitating severe sanctions against the Defendants.

## V.      Sanctions against Defense Counsel Under Federal Rule 37 for Failure to Cooperate in Discovery and Procedurally Impermissible Conduct

Defense counsel's systematic actions demonstrate a blatant disregard for the Federal Rules of Civil Procedure, particularly Rule 37, which governs failure to make disclosures or to cooperate in discovery. Their role has been instrumental in obstructing the discovery process by failing to preserve electronically stored information, altering evidence during court-ordered mediation, and actively advising their client to restrict and then block access to critical public social media posts.

Defense counsel's conduct has flagrantly violated multiple Rules Regulating the Florida Bar as well as Federal Rule 37, thereby necessitating severe sanctions. First, under Rule 4–3.4(a), counsel advised their client to restrict Plaintiff's access to pivotal public social media posts just three days before the discovery deadline of October 20, 2023. This action not only obstructed Plaintiff's access to evidence but also imposed severe constraints on Plaintiff's ability to complete discovery. Second, pursuant to Rule 4–3.4(c), during a court-ordered mediation session on September 8, 2023, Defense counsels knowingly presented altered evidence in a PowerPoint presentation. (See Exhibit H). When these discrepancies were pointed out, counsel Shannon Ligon invoked claims of confidentiality and privilege, contrary to established case law such as *Tiara Condo. Ass'n, Inc.*, 2007 WL 9701863. (See Exhibit W and P) Third, in violation of Rule 4–3.4(d), counsel further advised their client to block Plaintiff's counsel from viewing public social media posts on October 18, 2023, exacerbating the obstruction of Plaintiff's discovery efforts. This deliberate action led to unnecessary delays and escalating litigation costs, making it an intentional failure to comply with legally proper discovery requests. Lastly, under Rules 4–8.4(c) and 4–8.4(d), counsel's actions, characterized by dishonesty, fraud, deceit, and misrepresentation, are highly prejudicial to the administration of justice.

In a blatant violation of Federal Rule 37, Defense counsel has failed to both obey discovery rules and preserve electronically stored information crucial to the Plaintiff's case. Under Rule 37(e), Defense counsel's failure to safeguard vital social media posts, coupled with their client restricting and subsequently block

Plaintiff's access to these public posts, has led to the irrevocable loss of essential evidence. This conduct squarely falls under Rule 37(b)(2)(A), which permits the court to issue just orders when a party fails to provide or permit discovery. Exacerbating this misconduct, Defense counsel Shannon Ligon has taken the extraordinary step of stating she does not possess the PowerPoint and other evidence presented at the court-ordered mediation session on September 8, 2023. (See Exhibit M) Despite having already produced this material during mediation, she advised Plaintiff's counsel to request it via subpoena, further obfuscating the discovery process and evading her obligations under the Federal Rules. These cumulative actions not only undermine the discovery process but also make it impossible to restore the Plaintiff to their original position, thereby warranting the imposition of severe sanctions under Rule 37.

The timing of Defense counsel's actions aggravates their already serious misconduct. Significantly, on October 17, 2023, Plaintiff's counsel reported to Defense counsel that their client had restricted the Plaintiff's access to pivotal social media posts. In an alarming turn of events, the very next day, on October 18, 2023, the client's social media page was fully blocked, cutting off any access for the Plaintiff. The timing is highly suggestive that Defense counsel may have advised their client to take the affirmative step in blocking Plaintiff's counsel. These actions, taken just days before the discovery response deadline, have not only severely hampered the Plaintiff's ability to complete discovery but have also led to needless delays and increased litigation costs. Given the multitude and gravity of Defense counsel's violations, this Court should weigh the imposition

of sanctions under Federal Rule 37 and the Rules Regulating the Florida Bar seriously. The Plaintiff further respectfully requests that this order be forwarded to the Florida Bar for disciplinary proceedings against Defense counsel.

### VI.     Rule 37 Sanctions Against Defense Counsel for Bad Faith Conduct and Endorsement of Client Misconduct

The gravity of the allegations in this case is made all the more severe by Defense counsel's dismissive and cavalier attitude towards the Plaintiff's notice of intent to file sanctions. In response to Plaintiff's notice detailing the Defendant's spoliation of evidence and obstruction of access to public social media pages, Defense counsel replied, downplaying the severity of the issues. One counsel referred to the matter as "very trivial" (see Exhibit X), while the other questioned the "legality of such a theory" (see Exhibit Y). This dismissive response is not only troubling but also indicative of a failure to appreciate the gravity of their client's actions and their own complicity in this misconduct. Furthermore, when confronted with evidence that had been altered, Defense counsel Shannon Ligon asserted that the information is privileged and confidential, thereby implicitly supporting and backing their client's deceptive practices. (See Exhibit W and P) Defense counsel's dismissive attitude following the Plaintiff's notice of intent to file sanctions, as evidenced by their email correspondence, underscores the ethical and procedural issues at play here.

Adding to this, the Defendant escalated her obstructive behavior by completely blocking all access to her public social media posts, immediately after Defense counsel was notified about the initial restriction. This action, coming on

the heels of the email exchange, strongly implies that it may have been conducted with the knowledge or endorsement of Defense counsel. Such behavior serves as a glaring example of the type of unethical and procedurally impermissible actions that both Federal Rule of Civil Procedure 37 and the Rules Regulating the Florida Bar seek to deter.

By failing to take any remedial action and possibly advising their client to further obstruct Plaintiff's access to essential evidence, Defense counsel has arguably violated the ethical and procedural norms outlined in Federal Rule of Civil Procedure 37 and Rule 4–3.3(a) of the Rules Regulating the Florida Bar.

## VII.   Sanctions against Defense Counsel Under Federal Rule 37 and Florida Bar Rule 4–3.4(c) for Presentation of False Evidence at Mediation

Rule 37(b)(2)(A) empowers the court to issue "just orders," which can include deeming facts as established, prohibiting the introduction of evidence, or even dismissing the action partially or entirely. Rule 37(e) specifically targets the failure to preserve electronically stored information, allowing for corrective measures to cure prejudice or, in severe cases, for adverse presumptions against the non-compliant party.

Defense counsel's conduct in this matter is particularly egregious. During a court-ordered mediation on September 8, 2023, they presented altered evidence, thereby directly contravening the tenets of Rule 37 and implicating Florida Bar Rule 4–3.4(c), which governs the knowing disobedience of obligations under tribunal rules. Adding another layer of deceit, when confronted with the inconsistencies in the evidence they presented, Defense counsel Shannon Ligon

20

asserted that the documents were privileged and confidential, effectively backing their client's deceptive practices.

Moreover, Shannon Ligon has stated that the materials presented at the mediation are no longer in her possession and suggested they could be obtained through a subpoena—a process that would incur additional costs that she assumes the Plaintiff will bear. (See Exhibit M) This tactic further obstructs the Plaintiff's access to crucial evidence and raises serious ethical concerns. By refusing to correct these discrepancies even when they were explicitly pointed out, Defense counsel has not only knowingly disobeyed tribunal rules but has also obstructed the Plaintiff's ability to substantiate their claims, severely undermining the integrity of the judicial process.

Given these flagrant violations, this Court should consider imposing sanctions under Federal Rule 37 and Florida Bar Rule 4–3.4(c).

## VIII.   Imposition of Severe Sanctions Against the Defendant, Including Striking of Their Answer, Counter-Complaint, Affirmative Defenses, Drawing of Adverse Inferences, and Referral for Criminal Prosecution

Given the Defendant's orchestrated tactics—most notably the presentation of fabricated evidence during mediation and the deliberate acts of spoliation and obstruction executed just days before the October 20, 2023, discovery deadline—the Plaintiff urgently implores the Court to enact both severe civil and criminal sanctions. This intricate web of deceptive conduct, from the presentation of misleading evidence at mediation to last-minute barriers to critical social media evidence, has not only inflicted irreversible harm upon the Plaintiff but also

flagrantly violated the ethical and procedural sanctity of the judicial process. Such calculated and fraudulent actions necessitate a comprehensive legal response, including criminal investigation.

<u>The Defendant's Deliberate and Strategic Obstruction of the Judicial Process</u>

The Defendant's tactics of obstruction were glaringly evident during the court-ordered mediation on September 8, 2023. Defense counsel presented a PowerPoint purporting to detail the Defendant's past workshops, only for these details to be directly contradicted by their own subsequent interrogatory responses. The defense counsel, led by Shannon Ligon, employed a dismissive approach, invoking privilege and confidentiality to shield their misconduct, despite being presented with relevant case law that invalidates such defenses. This manipulative behavior constitutes not merely an ethical lapse but an abuse of the judicial process tantamount to gaslighting.

<u>Egregious Acts of Spoliation and Fraudulent Conduct</u>

Further aggravating the Defendant's misconduct is the introduction of altered evidence and removal of key information from their website. They presented new evidence during mediation that directly contradicted their own interrogatory responses, an act that goes beyond bad faith and potentially constitutes fraud upon the Court. Even more egregious is the deliberate restriction of Plaintiff's counsel's access to publicly viewable social media pages just three days before the discovery deadline. Defendants knew well in advance about Plaintiff's counsel's access to this crucial evidence, making their sudden "privacy concerns" not just disingenuous but patently fraudulent.

## The Immediate Need for Civil Sanctions

In light of these facts, the Plaintiff calls for the most severe civil sanctions, specifically the striking of the Defendant's Answer to Complaint, Counter-Complaint, and Affirmative Defenses. Additionally, the Plaintiff requests that the Court draw an adverse inference against the Defendant, particularly concerning their alleged priority claim to the disputed mark. This adverse inference is warranted given the irremediable nature of the Defendant's obstruction and spoliation, as supported by case law *Optowave Co. v. Nikitin*, No. 6:05-cv-1083-Orl-22DAB, 2006 U.S. Dist. LEXIS 81345 (M.D. Fla. Nov. 7, 2006) and St. Cyr v. Flying J Inc., No. 3:06-cv-13-33TEM, 2007 U.S. Dist. LEXIS 42502 (M.D. Fla. June 12, 2007) states that an adverse inference is permitted for the destruction or disappearance of crucial evidence. Given the Defendant's pattern of misconduct, lesser sanctions would not adequately address the violation of procedural and ethical standards, nor would they serve as an effective deterrent against future misconduct. *Optowave Co. v. Nikitin, No. 6:05-cv-1083-Orl-22DAB, 2006 U.S. Dist. LEXIS 81345 (M.D. Fla. Nov. 7, 2006)*; St. Cyr v. Flying J Inc., No. 3:06-cv-13-33TEM, 2007 U.S. Dist. LEXIS 42502 (M.D. Fla. June 12, 2007).

## Referral for Criminal Prosecution

Given the Defendant's systematic and calculated efforts to deceive the Court—manifested through repeated instances of evidence alteration and concealment—Plaintiff contends that a referral for criminal prosecution is not merely appropriate but absolutely imperative. These are not isolated incidents; they represent a consistent pattern of unethical behavior, involving multiple

pieces of evidence that have been manipulated or concealed. Even when confronted with questions about the veracity of the evidence, the Defendant and their counsel doubled down, resorting to spurious claims of privacy and confidentiality as a smoke screen for their misconduct. Such a measure is grounded in the Court's inherent authority to regulate proceedings and sanction litigants for abusive practices, as articulated in cases like *Vargas v. Peltz*, 901 F. Supp. 1572 (S.D. Fla. 1995) and *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332 (11th Cir. 2002). Given the egregiousness of the Defendant's conduct and the precedent set by these cases, civil sanctions alone would be insufficient to preserve the integrity of the judicial process. Therefore, the Plaintiff emphatically urges the Court to refer this matter to the State Attorney's Office for criminal sanctions.

## CONCLUSION

WHEREFORE, the Plaintiff, THE BEAUTIES AND THE BRANDS, LLC requests this honorable court impose civil and criminal sanctions against the Defendant's and their legal counsel which include the Defendant's Answer to the complaint, Counter-Complaint, and Affirmative Defenses, drawing an adverse inference against the Defendant and referral to the State Attorney's Office striking. Plaintiff requests this court award attorneys fees in pursing this matter.

## LOCAL RULE 3.01(g) CERTIFICATE

The undersigned has conferred with counsel for Plaintiff by telephone and by emails on October 19, 2023, October 26, 2023 and October 31, 2023. Defendant opposes the relief sought herein.

DATED this 26th day of October , 2023

Respectfully submitted by:

STOKES LAW GROUP, PLLC

/s/ Shaunette Stokes

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1ˢᵗ day of November, 2023, I electronically filed the foregoing with the Clerk of the Court using the EC/MF portal and that a true and correct copy of the foregoing has been served via electronic mail or other authorized method of service upon:

Shannon Alexis Ligon, Esq.
111 N. Orange Ave., Suite 800
Orlando, FL 32801
Email: saligon@fltriallawyers.com

Justin Maya, Esq.
9150 South Dadeland Boulevard,
Suite 1400
Miami, Florida 33256
Primary e-mail: justin.maya@csklegal.com

STOKES LAW GROUP, PLLC

/s/ Shaunette Stokes
Shaunette Stokes, Esq.
Florida Bar No. 109278
10150 Highland Manor Drive, Suite 200
Tampa, Florida 33610
(813) 444-4156 -Office
(813) 702-1976 - Facsimile
shaunette@stokeslegalcounsel.com
Attorney for Plaintiff